# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION,<br>1 Massachusetts Avenue, NW<br>Washington, D.C. 20001<br><br>　　　　Plaintiff,<br><br>v.<br><br>CONGRESSIONAL INSTITUTE, INC.,<br>1700 Diagonal Road, #300,<br>Alexandria, VA 22314<br><br>SERVE: Resident Agent<br>CT Corporation System<br>1015 15th Street, NW, Suite 1000,<br>Washington, D.C. 20005<br><br>　　　　Defendant. | Civil No. _____ |

## COMPLAINT

COMES NOW, Plaintiff National Railroad Passenger Corporation (hereinafter "Amtrak") by and through its attorneys, J. Christopher Nosher, and the law firm of Kiernan Trebach LLP, and for its Complaint against Defendant Congressional Institute, Inc. ("Defendant" or "CII") seeking declaratory judgment and money damages, states as follows.

## PARTIES

1. Amtrak is, and at all times relevant to this Complaint has been, a corporation organized under the laws of the District of Columbia with its principal place of business in the District of Columbia.

2. Defendant CII is, and at all times relevant to this Complaint, has been, a corporation organized under the laws of the District of Columbia with its principal place of business in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction in this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1349, as Amtrak is an entity created by congressional enactment of the Rail Passenger Services Act of 1970, 49 U.S.C. § 24101 *et seq.*, and a majority of the capital stock of Amtrak is owned by the United States, through its Department of Transportation, owning all of Amtrak's issued and outstanding preferred stock. *See Aliotta v. National Railroad Passenger Corp.*, 315 F.3d 756, 758 n.1 (7th Cir. 2003).

4. Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is has its principal place of business in Alexandria, Virginia and, as such, is a resident of this judicial district.

## FACTUAL BACKGROUND

5. On January 29, 2018, Amtrak and CII entered into a Charter Train Contract (the "Contract") wherein CII chartered a passenger train from Amtrak and certain other train operation related services for the purposes of providing railroad passenger transportation for approximately 450 passengers authorized by CII to take place on January 31, 2018. *See* **Exhibit A** – Jan. 29, 2018 Charter Train Contract ["Contract'] at Art. I, § 101.

6. Pursuant to Article II, Section 202 of the Contract, Amtrak's obligations were limited to providing the transportation specified in the agreement and did not include any special services unless specified in Schedule C of the Contract. *See id.* Art. II, § 202.

7. The Contract defined the Charter Transportation as a one-way trip on Train No. 923 scheduled to depart from Washington, D.C.'s Union Station at 8:30 am on January 31, 2018 and arrive that same day at 2:35 pm at the White Sulphur Springs Station in West Virginia. *See id.* at Schedule B, pg. 14.

8. Pursuant to Section 405 of Article 4 of the Contract, CII, defined by the Contract as "Charterer," obligated itself to:

> [R]elease and forever discharge and further agrees to defend, indemnify, and hold harmless Amtrak, its officers, directors, employees, subsidiaries and agents (collectively "Indemnified Parties"), of and from and against any lawsuit, claims, losses, damages, liabilities, penalties, causes of action, suits, costs and expenses incidental thereto (collectively "Liabilities") which any of the Indemnified Parties may hereinafter incur, be responsible for or pay as a result of injury or death of any person (including any Passenger), damage to or loss (including loss of use) of any property, including of the parties hereto, arising in any degree directly or indirectly out of the Charter Transportation and related operations, regardless of any fault on the part of any or all of the Indemnified Parties.

9. Section 405 of Article 4 of the Contract further states that the "obligations of this Section 405 shall not be limited by the existence of any insurance policy maintained by Charterer or the Indemnified Parties and shall survive the termination of this Agreement."

10. During all relevant periods, the Contract was, and continues to be, a valid and enforceable agreement between Amtrak and CII.

11. On January 31, 2018, a trash-hauling truck entered the highway-railroad grade crossing at Lanetown Road in Crozet, Virginia and collided with Train No. 923.

12. The trash-hauling truck involved in the collision was owned by Time Disposal, Inc. and operated by Time Disposal employee Dana Naylor. At the time of the collision, Time Disposal employees Dennis Eddy and Christopher Foley were riding in the cab of the truck as passengers.

3

13. As a result of the collision, Amtrak suffered property damage to its rail equipment and other losses.

14. In addition, Amtrak received notice of numerous claims for personal injury and/or wrongful death arising from the incident in question, including claims brought by Dennis Eddy and Christopher Foley.

15. On February 27, 2018, Amtrak issued a written demand letter to CII notifying that, pursuant to the terms of the Contract, CII would be responsible to indemnify and defend Amtrak for all losses, damages and/or claims incurred and/or suffered by Amtrak, including claims made against Amtrak arising out of the collision, and requesting confirmation from CII that it would fulfill its indemnification and defense obligations under the Contract. *See* **Exhibit B** – Feb. 27, 2018 Tender Correspondence.

16. On March 15, 2018, outside counsel for Amtrak issued a follow-up written demand letter to CII for indemnification and defense, pursuant to the Contract, with regard to any and all claims and losses associated with the January 31, 2018 collision. *See* **Exhibit C** – March 15, 2018 Tender Demand Letter.

17. On April 12, 2018, CII's insurance carrier, The Hartford Financial Services Group, Inc. ("The Hartford") sent Amtrak a response to the Tender Demand correspondence in which The Hartford confirmed that Amtrak's tender to CII had been accepted and agreed to indemnify and defend Amtrak regarding lawsuits filed against it as a result of the January 31, 2018 accident. *See* **Exhibit D** – April 12, 2018 Tender Decision Correspondence from The Hartford.

18. On September 7, 2018, a conservator for Dennis Eddy brought suit in the Circuit Court for Albemarle County, Virginia in the matter of *Eddy v. Buckingham Branch Railroad, et*

*al.* (Civil Action No. CL18-1361) for personal injuries allegedly incurred as a result of the incident in question.

19. On January 22, 2020, the estate of Christopher Foley brought suit in the Circuit Court for Albemarle County, Virginia in the matter of *Foley v. Buckingham Branch Railroad, et al.* (Civil Action No. CL18-1361) for the wrongful death of Mr. Foley, allegedly incurred as a result of the incident in question.

20. On January 23, 2020, Amtrak employee Robert Shawn Young, the engineer operating Train 923 at the time of the incident in question, was added as a defendant in the *Eddy* case. Mr. Young had previously been named as a defendant in the *Foley* case.

21. Thereafter, Amtrak advised CII of the inclusion of Mr. Young as a defendant in the *Eddy* and *Foley* cases and renewed its demands for indemnity and defense of Mr. Young, as an agent of Amtrak, pursuant to the Charter Agreement.

22. On March 19, 2020, The Hartford sent Amtrak a further response to the Tender Demand correspondence in which The Hartford confirmed that Amtrak's tender had been accepted and agreed to indemnify and defend Amtrak engineer Robert Shawn Young in connection with lawsuits filed against him as a result of the January 31, 2018 accident. *See* **Exhibit E** – March 19, 2020 Tender Decision Letter from The Hartford.

23. The correspondence from The Hartford indicated that the cost of providing a defense to Mr. Young would erode the limits of coverage available under the applicable insurance policies available regarding the January 31, 2018 accident. *See* **Ex. D & Ex. E**.

24. On May 6, 2022, Amtrak sent correspondence to counsel for CII notifying that Plaintiff in the *Eddy* matter, in which Mr. Young was the sole remaining defendant, had agreed to settle the matter for $3,000,000.00, that The Hartford would contribute its remaining policy limits

to resolve the case if Amtrak would pay the balance of the settlement amount and seek to enforce CII's responsibility for the full remaining balance of the settlement funds, in addition to any other amounts recoverable under the Charter Agreement. *See* **Exhibit F** – May 6, 2022 Correspondence to CII counsel.

25. As of the date of this filing, CII has refused to fulfill its obligations to indemnify and defend Amtrak under the Contract and has refused to pay the settlement balance required to resolve the *Eddy* matter even though it never has denied that the Contract requires it to indemnify and defend Amtrak.

26. Amtrak denies all liability for the January 31, 2018 collision and responsibility for any damages claimed by any claimant or party to a related litigation.

27. By the clear and express terms of the Contract, Amtrak is entitled to indemnification and defense from, and to be held harmless by, CII for any damages suffered or claims brought against Amtrak as a result of the Charter Transportation Services provide to CII on January 31, 2018.

28. Defendant Congressional Institute, Inc. has failed to meet its obligations under the Contract to indemnify, defend, and hold Amtrak harmless for damages and amounts incurred for claims related to the January 31, 2018 accident. As a direct and proximate result of CII's breaches of contract and other wrongful conduct, Amtrak has suffered and will continue to suffer direct and consequential injury and damages.

## COUNT I – BREACH OF CONTRACT (*Eddy*)

29. Amtrak incorporates by reference its allegations in Paragraphs 1 – 28 as if fully set forth herein.

30. Under the terms of the Contract, CII is obligated to "defend, indemnify, and hold Amtrak, its officers, directors, employees, subsidiaries and agents . . . of and from and against any lawsuit, claims, losses, damages, liabilities, penalties, causes of action, suits, costs and expenses incidental thereto . . . which any of the Indemnified Parties may hereinafter incur, be responsible for or pay as a result of injury or death of any person . . . arising in any degree directly or indirectly out of the Charter Transportation and related operations." *See* **Ex. A**, Contract Art. IV, §405.

31. This obligation to indemnify, defend, and hold Amtrak harmless was undertaken by CII "regardless of any fault on the part of any or all of the Indemnified Parties," and such "obligations of this Section 405 shall not be limited by the existence of any insurance policies maintained by Charterer or the Indemnified Parties and shall survive the termination of this Agreement." *See id.*

32. This indemnity obligation extends to any liability or amounts paid by Amtrak arising out of the *Eddy* matter.

33. CII has failed to meet this obligation to defend, indemnify, and hold Amtrak harmless for the amounts expended by Amtrak in resolving the *Eddy* matter, despite Amtrak's repeated requests for CII to do so, including but not limited to, funding the excess amount of settling the *Eddy* matter beyond the amounts of remaining coverage available in the applicable insurance policies.

34. As a result of CII's failure to meet its indemnity and defense obligations under the Charter Agreement, Amtrak has suffered and continues to suffer damages, including but not limited to payment of the balance of the settlement amount in the *Eddy* case and continuing attorneys' fees in the negotiation and consummation of the settlement. Amtrak is therefore entitled

to recover compensatory damages from CII, related declaratory relief, and court costs, in amounts to be proven at trial.

## COUNT II - BREACH OF CONTRACT (*Foley*)

35. Amtrak incorporates by reference its allegations in Paragraphs 1 – 34 as if fully set forth herein.

36. Under the terms of the Contract, CII is obligated to "defend, indemnify, and hold Amtrak, its officers, directors, employees, subsidiaries and agents . . . of and from and against any lawsuit, claims, losses, damages, liabilities, penalties, causes of action, suits, costs and expenses incidental thereto . . . which any of the Indemnified Parties may herein after incur, be responsible for or pay as a result of injury or death of any person . . . arising in any degree directly or indirectly out of the Charter Transportation and related operations." *See* **Ex. A**, Contract Art. IV, §405.

37. This obligation to indemnify, defend, and hold Amtrak harmless was undertaken by CII "regardless of any fault on the part of any or all of the Indemnified Parties" and such "obligations of this Section 405 shall not be limited by the existence of any insurance policies maintained by Charterer or the Indemnified Parties and shall survive the termination of this Agreement." *See id.*

38. This indemnity obligation extends to any liability or amounts paid by Amtrak arising out of the *Foley* matter.

39. Since the exhaustion of the ostensible policy limits provided by its insurer, CII has failed to accept its obligation to defend, indemnify, and hold Amtrak harmless in connect with the *Foley* matter, despite Amtrak's previous demands for CII to do so.

40. As a result of CII's failure to meet its indemnity and defense obligations under the Charter Agreement, Amtrak has suffered and continues to suffer damages, including but not

limited to continuing attorneys' fees in the defense of the *Foley* case. Amtrak is therefore entitled to recover compensatory damages from CII, related declaratory relief, and court costs, in amounts to be proven at trial.

WHEREFORE, Plaintiff National Railroad Passenger Corporation demands judgment in its favor as follows:

a. A declaratory judgment as to: (i) the validity, effect and application of the Charter Agreement between CII and Amtrak; and (ii) the nature and extent of the breaches of the Charter Agreement by CII;

b. An award of compensatory damages in excess of seventy-five thousand dollars ($75,000) for breach of contract for CII's failure to comply with its indemnity and defense obligations under the Charter Agreement;

c. An award of prejudgment interest on any compensatory damage award for CII breach of its contractual obligations; and

c. An award to Amtrak of the costs of its suit, including attorneys' fees available under the Charter Agreement and/or otherwise recoverable at law.

Respectfully submitted,

    */s/ J. Christopher Nosher*
J. Christopher Nosher (VSB No. 43070)
KIERNAN TREBACH LLP
One Park Place, Suite 425
Annapolis, Maryland 21401-3539
Telephone: (443) 263-2800
Facsimile: (443) 263-2935
Email: cnosher@kiernantrebach.com
*Counsel for Plaintiff National Railroad Passenger Corporation*